JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Danial C. Barnes appeals from his convictions for robbery and kidnaping. He asserts that he received ineffective assistance of counsel because his attorneys failed to move to suppress statements he made while he was being detained by the police pending identification by the victim. We find that counsel provided professionally competent assistance to appellant, and that appellant was not prejudiced by any errors by counsel. Therefore, we affirm his convictions.
 Facts and Proceedings Below {¶ 2} Appellant was charged in a two count indictment filed July 30, 2002. Count one alleged he committed aggravated robbery, in violation of R.C. 2911.01; count two alleged he committed kidnaping, in violation of R.C. 2905.01. He was referred for psychiatric evaluation and was found to be competent to stand trial.
 {¶ 3} On October 31, 2002, appellant's attorney moved to suppress post-arrest statements appellant made to police after he asked to talk to an attorney. The court conducted a hearing on this motion on November 4, 2002, immediately before the start of trial. At the conclusion of the hearing, the court denied the motion. The case then proceeded to trial.
 {¶ 4} The evidence at trial showed that appellant entered a Lakewood convenience store at approximately 3:00 a.m. He forced the owner, Samir Soliman, to the rear of the store at knifepoint, and closed him in a storage room. Appellant then took nine envelopes, each containing $40, from a drawer. This drawer was not the regular cash drawer, but was a place where the owner kept packets of smaller bills which a cashier could exchange for two twenty-dollar bills. After taking this money, appellant ran out the front door of the store.
 {¶ 5} The victim escaped from the storage area through a back door and went around the building toward the front of the store. He found a regular customer, John Kirby, parked in front. The victim told Kirby he had been robbed. He saw the robber running toward Hilliard and then toward Madison. The victim went back into the store to call police. He found a knife on the floor of the store.
 {¶ 6} Appellant told police the robber was a white male, approximately six feet to six feet, two inches in height, wearing a striped shirt, dark pants, and a hat. He also informed the police that the robber's wife had worked at the store, and gave them her name. He advised the police that the robber and his wife lived approximately two blocks away from the store.
 {¶ 7} The police obtained appellant's address via the police computer and four officers responded to that address. Approximately 30 minutes after the robbery, police observed appellant walking toward a taxi which was parked near his home address. Appellant was wearing a white shirt and black pants, and was sweating profusely. Police officers approached him and asked for his name and address, which he provided. They patted appellant down and handcuffed him. The police asked appellant why he was sweating so much, and appellant explained that his apartment was hot. Police also asked appellant where he was going. Appellant said he was going out to some clubs and to buy cigarettes. The police held appellant for identification by the victim. Appellant told police that his wife had worked at the store, that the owner of the store had asked her out, that he would not enter the store and the owner was "trying to get" appellant. After appellant was identified by the victim, the police placed appellant under arrest.
 {¶ 8} On appellant's motion, the court reduced the charge of aggravated robbery to robbery. The jury returned a verdict against appellant on both counts, and the court sentenced appellant to five years of community control sanctions.
 Law and Analysis {¶ 9} Appellant argues that he received ineffective assistance of counsel because his attorney failed to move to suppress statements he made to the police before he was identified by the victim and placed under arrest. The test for determining whether counsel was constitutionally ineffective is essentially the same under both Ohio and federal law:
 {¶ 10} "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, whose result is reliable." Strickland v. Washington (1984),466 U.S. 668, 687; see, also, State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus.
 {¶ 11} The court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, supra, at 690. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, supra; see, also, State v. Smith (1985), 17 Ohio St.3d 98. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." State v. Bradley, 42 Ohio St.3d at paragraph three of the syllabus.
 {¶ 12} We cannot say that the representation provided by appellant's attorneys was deficient because his attorneys did not move to suppress the statements appellant made to police prior to the victim's identification of him as the robber. First, the fact that counsel filed a motion to suppress appellant's post-arrest statements is "compelling evidence" that defense counsel was familiar with the facts surrounding appellant's arrest and made a tactical decision not to move to suppress these prior statements. State v. Madrigal (2000), 87 Ohio St.3d 378,389.[1] Such tactical decisions are within the wide range of professionally competent assistance. Strickland, 466 U.S. at 690.
 {¶ 13} Furthermore, appellant cannot show that the motion would have been successful if it had been made. Appellant urges that he made the statements while in custody and without having been given Miranda warnings. However, appellant has not pointed to any evidence in the record which demonstrates that he was not given Miranda warnings. Our review of the trial transcript indicates that neither the prosecutor nor defense counsel questioned the police officers about this matter. Thus, even if we assume that the police questioning amounted to a custodial interrogation, the record does not demonstrate that appellant's statements would have been suppressed if counsel had raised the issue.
 {¶ 14} Moreover, we cannot say that appellant was prejudiced by the introduction of those statements into evidence. First, the statements which appellant claims should have been suppressed were of minimal significance in proving his guilt or innocence. Appellant's statements that he was going to a club and was going to buy cigarettes were incredible given the hour, but they did not address the substance of the offense. His statement that he was sweating because his third floor apartment was hot, even though the air conditioner was running, was also of questionable credibility, but again, did not go to the substance of the offense. At most the jury could draw an inference of guilty knowledge and evasiveness from these statements. Finally, his statements that the owner of the store had asked his wife out, that he would never go into that store, and that the owner was "trying to get" appellant, were exculpatory, not inculpatory.
 {¶ 15} The other evidence of appellant's guilt was compelling. It was clear that the robber was familiar enough with store operations to know where the cash envelopes were kept; the fact that appellant's wife had worked at the store explained this familiarity. Although the victim did not know appellant's name, he knew appellant and his wife and knew where they lived, and was able to positively identify him as the robber immediately after the crime. Given these facts, we cannot say that there is "a reasonable probability that absent [the attorneys'] errors, the factfinder would have had a reasonable doubt respecting guilt."Strickland, 466 U.S. at 695.
 {¶ 16} Appellant has failed to show that his attorneys' performance was deficient, or that he was prejudiced by any deficiency. Accordingly, we overrule appellant's sole assignment of error and affirm his convictions and sentences.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, P.J. and TIMOTHY E. McMONAGLE, J. CONCUR
[1] Appellant suggests that the standard of review applied by the Ohio Supreme Court in Madrigal was recently "reversed" by a federal district court reviewing the matter on a petition for a writ of habeas corpus.Madrigal v. Bagley (N.D. Ohio 2003), 274 F. Supp.2d 744, *129-*134. A review of that case indicates that the federal court adopted precisely the same standard of review applied by the Ohio Supreme Court on this issue, and reached precisely the same result.
Appellant urges us to apply a harmless error standard to the question whether the appellant was prejudiced by an alleged error by his attorneys. The analysis which appellant urges us to adopt was actually applied by the Madrigal court with respect to a violation of appellant's right of confrontation. The court found that a constitutional violation had occurred; the issue was whether the violation was harmless. The harmless error standard applied by the court in that context was that a constitutional error will be deemed "harmless unless it `had a substantial and injurious effect or influence in determining the jury's verdict.' * * * This standard of review requires a reviewing court to examine the effect of the error on the jury rather than the sufficiency of the evidence at trial." Madrigal v. Bagley, 276 F. Supp.2d 744 at *60-*61.
By contrast, the prejudice prong of the effective assistance of counsel analysis must be met before a constitutional violation is even found. It requires the appellant to show that the error was so serious as to deprive him of a fair trial. This was the standard applied by theMadrigal v. Bagley court to the petitioner's claim of ineffective assistance of counsel. We decline to apply the constitutional harmless error standard which appellant proposes in this context.